### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RANDY JACKSON, JR.,

         *Plaintiff*,

*v.*


KERN, RIMMER,
and MICHELLE LNU,

      *Defendants*.

_____/

      CASE NO. 2:19-cv-10114
      DISTRICT JUDGE SEAN F. COX
      MAGISTRATE JUDGE PATRICIA T. MORRIS

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO TRANSFER AND FOR A MORE DEFINITE STATEMENT (R. 12)

## I.    RECOMMENDATION

Plaintiff Randy Jackson, Jr., is a pretrial detainee at the county jail in Saginaw, Michigan. (R. 1.) His lawsuit, brought under 42 U.S.C. § 1983, has already been screened and various claims have been dismissed. *Jackson v. Saginaw Co.*, No. 2:19-CV-10114, 2019 WL 423822 (E.D. Mich. Feb. 4, 2019). Defendants Kern and Rimmer now move to transfer the case to the Northern Division of the Eastern District of Michigan and for a more definite statement. (R. 12.) For the reasons that follow, I recommend **DENYING** Defendants' motion to transfer and **GRANTING** their motion for a more definite statement.[1]

---

[1] This case was referred to me—under 28 U.S.C. § 636(b)(1), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, (R. 9)—for all pretrial proceedings, including determining non-dispositive matters and submitting reports and recommendations on dispositive matters. Magistrate judges often treat motions to

II.   **REPORT**

    A.   **Facts**

        Plaintiff's complaint challenges the conditions of his confinement, alleging that the

Saginaw County Jail

> is unsanitary with dusty vents, moldy showers, and thin mats for sleeping,
> that he is not being given sufficient recreation time, and that he is not being
> properly treated for his medical/mental health condition. The plaintiff names
> Saginaw County, the Saginaw County Jail, Lieutenant Kern, Sergeant
> Rimmer, and Mental Health Worker Michelle as the defendants in this action.

*Jackson*, 2019 WL 423822, at *1. The Court has granted him *in forma pauperis* status and

screened his complaint. *Id.* The sole remaining allegations, which the Court found to state

claims for relief, are that Defendants violated the Eighth Amendment "based upon the

conditions of [Plaintiff's] confinement and his medical care at the Saginaw County Jail."

*Id.* at *3.

    B.   **Motion to Transfer**

        Defendants make two arguments in favor of transfer. First, citing only 28 U.S.C. §

102, they claim that the Northern Division is the proper venue. (R. 12, ID.48, 54-55.) Since

that Division includes Saginaw, where Plaintiff is located and the events at issue occurred,

Defendants surmise that the case "was apparently mistakenly assigned to the Southern

Division." (R. 12, ID.49.)

        Defendants are incorrect. True, since 1894 Saginaw County has been part of the

---

transfer as non-dispositive and handle them by order. *See, e.g., Ghaith v. Rauschenberger*, No. 09-14336,
2010 WL 431596, at *1 n. 1 (E.D. Mich. Jan. 28, 2010), *aff'd by* 2010 WL 1644054 (E.D. Mich. Apr. 2010).
However, I agree with the conclusion in *Payton v. Saginaw Co. Jail*, 743 F. Supp. 2d 691 (E.D. Mich.
2010), that these motions be addressed in report and recommendations.

congressionally created Northern Division. An Act to Provide for the Division of the Eastern District of Michigan, 28 Stat. 67, 67-68 (1894); *see generally* Chardavoyne, *The United States District Court for the Eastern District of Michigan: People, Law, and Politics*, 129-131 (2012). But § 102 "is not a venue provision." *Clemons v. Caruso*, No. 06-CV-13230, 2006 WL 2485873, at *1 (E.D. Mich. Aug. 28, 2006). It simply divvies the District into two divisions and selects cities where court can be held—it does not say where cases must go. *Id.*

Defendants find no help in the general statutes controlling venue. Under those provisions, divisions have been irrelevant since 1988, when Congress repealed 28 U.S.C. § 1393. Judicial Improvements and Access to Justice Act, Pub. L. No. 100-72, § 1001, 102 Stat. 4642 (Nov. 19, 1988) (effective 90 days after enactment). Section 1393 had established venue for multi-division district courts, directing cases into the division where the defendant resided. 28 U.S.C. § 1393 (1982). But with its repeal "there is no longer any statutory requirement that venue in federal civil cases be laid in a particular division within a district." 14D Wright & Miller, *Fed. Prac. & Proc.* § 3809 (4th ed.).

The current governing statute, 28 U.S.C. § 1391(b), does not mention divisions. Rather, it establishes that venue is proper in a "judicial district" where all the defendants reside, "a substantial part of the events or omissions" took place, or, if no such places exist, where "any defendant is subject to the court's personal jurisdiction." Thus, after the repeal of § 1393, the statute assigns venue to districts, not divisions within districts. *See Johnson v. Lewis*, 645 F. Supp. 2d 578, 580 (N.D. Miss. 2009) ("'[T]he purpose in repealing § 1393

was not to prohibit divisional venue, but rather not to require it. . . . [I]f there is no local rule, venue need be set only on a district basis, disregarding divisions." (citation omitted)).[2]

While the venue statutes no longer direct traffic at the division level, local rules still can, and ours do. *See generally* 28 U.S.C. § 137(a); 14D Wright & Miller, *supra* at § 3809; *Moysi v. Trustcorp, Inc.*, 725 F. Supp. 336, 338 (N.D. Ohio 1989); Botoman, Note, *Divisional Judge-Shopping*, 49 Colum. Hum. Rts. L. Rev. 297, 316 (2018); *but see* Lawson & Ludington, *A Proposal for Restructuring the Eastern District of Michigan*, 90 Mich. B.J. 42, 43 (2011) ("[I]t takes an act of Congress to reallocate the . . . workload[] between the divisions."). Local Rule 83.10 states that, "[e]xcept as provided in LR 83.11," civil cases arising in Saginaw are to be held in Bay City, *i.e.*, the Northern Division. The exception in Local Rule 83.11 is critical. It provides that "special civil cases"—which include those under 42 U.S.C. § 1983, like the one here—are assigned randomly to all judges across the entire District. E.D. Mich. LR 83.11(a)(3); *see also Matthews v. Craige*, 1:16-CV-11680, 2016 WL 4036892, at *1 (E.D. Mich. July 28, 2016) ("Local Rule 83.11 provides that special civil cases . . . are assigned to a judge by random draw regardless of the place of holding court where the case is filed.").

---

[2] *See also Int'l Fidelity Ins. Co. v. Cedars Engineering Construction Inc.*, No. SA CV12-01407, 2012 WL 12895827, at *2 n. 2 (C.D. Cal. 2012) ("The statutory provision under which Plaintiff argues that venue is improper, 28 U.S.C. § 1391, considers only in which District, and not which Division, an action is brought."); *Jordon v. Bowman Apple Prod. Co., Inc.*, 728 F. Supp. 409, 419 (W.D. Va. 1990) ("[W]here the local rules are silent . . . there is no longer any requirement in federal civil cases that venue be laid in a particular division within a district. Under the plain language of Title 28, U.S.C., venue remains a question only on the District level."); 32A Am. Jur. 2d *Federal Courts* § 1118 (2019) ("[W]here local rules are silent, there is no longer any requirement in federal civil cases that venue be laid in a particular division within a district.").

Generally, then, cases are assigned by Division, except for certain classes of cases, such as special civil cases, which are assigned District-wide. *See generally* Botoman, *supra*, 49 Colum. Hum. Rts. L. Rev. at 317-320 (discussing the assignment systems in multi-divisional districts). Under this framework, the present case landed in the Southern Division. Because this random assignment complies with the local rules, venue is proper. *Cf. Int'l Fidelity Ins. Co. v. Cedars Engineering Construction Inc.*, No. SA CV12-01407, 2012 WL 12895827, at *2 n. 2 (C.D. Cal. 2012) (rejecting argument that random assignment resulted in improper venue, because the "process does not consider in which Division . . . a complaint has been filed or the Division in which the office or residence of a defendant in the action may be located").

This leaves Defendants' argument that the case should be transferred under 28 U.S.C. § 1404(a) because the Northern Division is more convenient. As the moving parties, Defendants must shoulder this burden. *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 799 (E.D. Mich. 2009). Courts enjoy "broad discretion to transfer an action pursuant to section 1404 to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience." *Id.* at 800.

Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* The first question the statute presents here is whether the case could have been heard in the Northern Division. As noted above, venue was proper in the Eastern

District, and the assignment to the Southern Division was simply random. Consequently, venue would have been just as proper in the Northern Division.

Next, merits of transfer turn upon an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Various factors are employed in the analysis:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Amphion, Inc. v. Buckeye Electric Co.*, 285 F. Supp. 2d 943, 947 (E.D. Mich. 2003) (quotation marks and citation omitted). Of these, witness convenience is usually deemed the most significant. *See Lafrance v. Grand River Navigation Co., Inc.*, No. 08–13411, 2008 WL 5413078, *3 (E.D. Mich. Dec. 29, 2008); 15 Wright & Miller, *Fed. Prac. & Proc.* § 3851 (4th ed.). The location of counsel usually receives "little weight" in the analysis. *Lafrance*, 2008 WL 5413078, at *3.

Not all of these factors relate to the present case. Defendants argue only that the events occurred in Saginaw, and the parties, witnesses, and documents are there as well. (R. 12, ID.58.) Moving the case to the Northern Division would enable "easier access" to the evidence. (*Id.*) Their argument, in a nutshell, is that Saginaw is closer to Bay City than it is to Detroit.[3] Even so, they admit that this "does not present much of an issue for

---

[3] About 97 miles closer from the Saginaw County Jail to the respective courthouses. https://www.google.com/maps. *See Livingston Christian Schs. v. Genoa Charter Twp.*, 858 F.3d 996, 1008

6

deposition purposes," and is "significant" only if there is a trial. (R. 18, ID.58 & n. 1.)

The trouble with litigating in Detroit comes down to the extra distance. To be sure, the longer trek is an inconvenience. But it is one that results from how the District distributes cases. Randomly assigning special civil cases to judges across the District means that some cases arising in one Division will end up in the other.

If this were enough to justify transfer, the system for assigning special civil cases would break down. Parties whose cases are assigned across division lines could, in essence, opt out of Local Rule 83.11(a)(3). The Rule must be preserved by requiring parties seeking transfer under § 1404(a) to show inconvenience based on something more than the simple operation of the Rule; that is, if the case arose in one Division but is randomly assigned to the other, that random assignment alone is not enough to merit a § 1404(a) transfer.

There are other good reasons for this conclusion. Our method of assignment reflects the District's efforts to effectively distribute its caseload and, perhaps, to avoid some of the dangers of rigid divisional lines. *Cf. Johnson*, 645 F. Supp. 2d at 581-582 (noting that allowing district-wide filing helped address divisional forum-shopping concerns); *Moysi*, 725 F. Supp. at 339 (noting that the repeal of § 1393's divisional venue rules was "intended . . . to afford districts greater flexibility and freedom to implement any process which would be effective in the distribution of their business"). The cost, of course, is that litigants and witnesses are sometimes required to endure longer travel distances than if a particular

---

(6th Cir. 2017) ("We may take judicial notice of maps showing the distances between these locations."). Courts have found that an extra distance of roughly this length is not "the sort of significant inconvenience that would tip the balance in favor of transfer." *Ward v. Stewart*, 133 F. Supp. 3d 455, 464 (N.D.N.Y. 2015) (collecting cases to conclude that an additional 88 miles of travel was not significant).

district judge only heard cases in his or her own division." *Johnson*, 645 F. Supp. 2d at 582. But that is a price the local rules accept to attain the benefits of District-wide distribution. Without some additional inconvenience, transfer should not be ordered.

The same basic conclusion was reached in *Jackson v. Kohlway*, 599 F. Supp. 2d 1035 (E.D. Wisc. 2009). There, a local order assigned civil cases to the division with the "greatest nexus" to the case; however, like our District, it randomly assigned certain § 1983 actions across the entire district, such that a case could end up in one division even if it had a greater nexus to another division. *Id.* at 1036. The case in *Jackson* allegedly had the closest nexus to the Green Bay Division but was randomly assigned to the Milwaukee Division. *Id.* The court held that the random assignment "does not mean that [the case] cannot be transferred to the Green Bay Division," but the random assignment provision "would serve no purpose if, after random assignment, a prisoner civil case could be transferred to the division with which it has the greatest nexus." *Id.* Consequently, to obtain a transfer in such cases, the "party must show that extraordinary circumstances exist that make the transfer appropriate despite the requirement that prisoner civil cases be randomly assigned." *Id.* at 1036-1037.

In the present case, the Court does not need to consider whether an "extraordinary circumstances" requirement is appropriate. It is enough, here, to observe that Defendants have not attempted to justify transfer by offering *any* circumstances beyond the bare random assignment. What is more, the inconvenience is diminished because all pretrial matters have been referred to me and will be handled in the Northern Division. (R. 9.) *Cf.*

8

*Ward*, 133 F. Supp. 3d at 364 n. 12 (rejecting transfer when the assigned magistrate was in a different division closer to the witnesses).

For these reasons, the motion to transfer should be denied.

### C.    Motion for a More Definite Statement

Defendants' second request fares better. The photocopy of the complaint—apparently, the only one available to Defendants—is too faint to read, they contend. (R. 12, ID.50.) Consequently, they move for a more definite statement, asking for a legible version. (*Id.*)

A motion under Fed. R. Civ. P. 12(e) contends, in essence, that the moving party cannot discern a complaint's claims: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The rule relates to the clarity of the complaint and applies when the pleading is too opaque to permit a meaningful response. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 849 (7th Cir. 2017) ("Rule 12(e) . . . is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the court to handle the litigation effectively."). To succeed, the moving party must show that the complaint is so unintelligible that they would be seriously prejudiced by having to attempt an answer.

*Clark v. Lafayette Place Lofts*, No. 14-12519, 2015 WL 13747956, at *1 (E.D. Mich. July 20, 2015).

Defendants do not claim that the complaint's substance is vague or incomprehensible; it simply cannot be deciphered, they say. As Judge Cox observed, Plaintiff's "complaint is difficult to read (due to copy quality)." *Jackson v. Saginaw Co.*, No. 2:19-CV-10114, 2019 WL 423822, at *1 (E.D. Mich. Feb. 4, 2019). The photocopying process appears to have bleached patches of Plaintiff's handwritten allegations, leaving many facts fuzzy. The complaint arrived at the Court in this shape, as evidenced by the clerk's stamp of "poor quality original" on its front page. (R. 1, ID.1.)[4]

Defendants do not consider whether Rule 12(e) is the appropriate vehicle for ensuring legibility or whether the Rule only deals with clarifying legible allegations that make no sense.[5] Few cases address legibility concerns in the context of Rule 12(e). Those that do, invariably in short analyses, have either ordered more definite statements when the original is illegible or else give no reason to believe the Rule is inapplicable in these circumstances. *See, e.g.*, *Cook v. MDOC-Muskegon Correctional Facility*, No. 14–12314, 2015 WL 668744, at *1 (E.D. Mich. Feb. 17, 2015) (noting that the court had granted a Rule 12(e) motion because the complaint was "incoherent and virtually illegible" (citation omitted)); *Jones v. Maritz Research Co.*, No. 14–2467–SAC, 2014 WL 6977935, at *2, 4

---

[4] Who scanned the complaint is unknown: Plaintiff or prison officials.

[5] They also ignore what role Local Rule 5.1(a)(2) might play, as that Rule explicitly requires filings be "plainly typewritten, printed, or prepared by a clearly legible duplication process." These requirements can be enforced through sanctions. E.D. Mich. LR 11.1.

(D. Kan. Dec. 9, 2014) (granting motion when the "complaint contains very few facts, many conclusions, and much illegible handwriting . . . . in so many places that the Court cannot read it"); *Schoolfield v. Dep't of Correction*, No. 91 Civ 1691, 1993 WL 127202, at *1 (S.D. N.Y. Apr. 20, 1993) (noting that the court had granted motion because the "original complaint was written in longhand, barely legible and syntactically incomprehensible"); *see also Mullis v. Pennington*, No. 1:06-CV-2755-CC, 2008 WL 11408594, at *5 (N.D. Ga. Mar. 31, 2008) (denying motion because the defendants had already filed an answer to the complaint but reminding plaintiff to file legible documents in accordance with the local court rules).[6] Following this caselaw, I conclude that illegibility provides a basis for ordering a more definite statement under Rule 12(e).[7]

Applying the Rule, I conclude that a legible complaint is needed. True, many parts are readable. It is clear, for example, that Plaintiff thinks the commissary peddles

---

[6] Other cases discuss dismissing complaints under Rule 8(a)—which requires a short and plain statement of the claim—due to illegibility. *See, e.g., Moss v. United States*, 329 F. App'x 335, 336 (3d Cir. 2009) (noting that a party must be allowed to amend before dismissing on this basis); *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *1-2 (10th Cir. 2007) (upholding dismissal when many pages were "virtually unreadable" because the photocopying rendered the print too light and where the complaint was too long); *Ruther v. United States Officers*, No. 1:13–CV–1640, 2013 WL 4041592, at *4 (M.D. Penn. Aug. 8, 2013) (concluding complaint should be dismissed under Rule 8(a) where it was "both illegible and incomprehensible").

[7] Applying Rule 12(e) to illegibility makes sense because it gives the Rule independent function. *Cf.* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, §26 (2012) (discussing the need to give meaning to every provision if possible). It would lack such a function if it focused solely on substantively incomprehensible allegations. That sort of pleading problem is often vulnerable, instead, to a Rule 12(b)(6) motion, which is discussed more below, and which attacks a complaint for failing to state a claim. *See* 5C Wright & Miller, *supra* at § 1376 (noting that "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small" because it applies only to pleadings that can survive a Rule 12(b)(6) but are nonetheless vague). A complaint that is simply illegible, on the other hand, does not necessarily raise Rule 12(b)(6) concerns. Therefore, interpreting the Rule to apply to legibility problems allows it a separate role.

overpriced items, and he is given only a thin mat for a bed and no recreation time. (R. 1, ID.5, 16.) Many of these issues, however, are discernable only in part. Poor copy quality makes his problems with sanitation, ventilation, coldness, and the television less than clear by blotting out the surrounding words. (*Id.*) In another place, he mentions some form of illness, but it is unclear what. (R. 1, ID.5.)

Indeed, many key words and phrases, and some entire lines, have been lost to the photocopying process, and the ordeal of deciphering them is compounded by poor handwriting and spelling. For example, take the paragraph containing allegations against Sergeant Rimmer. (R. 1, ID.7.) It appears that they might relate to grievances filed in December 2018, but this is a weak guess at best. The body of the paragraph has been irreversibly blighted by the copy machine. Defendants cannot mount a credible response to those illegible allegations.

The fact that the complaint has survived the IFP screening under 28 U.S.C. § 1915(e) does not affect the need for a more definite statement. The screening process required the Court to assess whether the complaint stated a claim that could entitle Plaintiff to relief. 28 U.S.C. § 1915(e)(2)(B). Under this standard—the same as for a motion to dismiss per Rule 12(b)(6)—the court considered whether, taking the allegations as true, the plaintiff could "prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). More particularly, whether plaintiff pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Applying this standard, the Court here determined that only one viable claim sought "relief under the Eighth Amendment against the remaining defendants based upon the conditions of his confinement and his medical care at the Saginaw County Jail." *Jackson*, 2019 WL 423822, at *3. The allegations were that "the jail is unsanitary with dusty vents, moldy showers, and thin mats for sleeping, that he is not being given sufficient recreation time, and that he is not being properly treated for his medical/mental health condition." *Id.* at *1. These allegations are about all that can be sussed out from the complaint.

That these allegations state a claim—and could survive a Rule 12(b)(6)—does not mean that they surmount a Rule 12(e) motion. The two types of motions are distinct, even if the distinction is "difficult to perceive." 5C Wright & Miller, *supra* at § 1376. As one treatise explains, a Rule 12(e) motion can succeed even when the targeted claims are "sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories," *i.e.*, to survive a Rule 12(b)(6) motion. *Id.*; *see also Burkhart v. Tecnocap, LLC*, No. 5:11CV165, 2012 WL 32923, at *1 (N.D. W.V. Jan. 6, 2012) ("[A] pleading which satisfies the liberal pleading standards above described may be nonetheless appropriately challenged as overly vague with a Rule 12(e) motion."). The reason is that a claim might be sufficiently stated, yet for some reason lack enough specificity to let the opposing side respond. *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 233 (D. N.J. 2003).

Here, the illegibility justifies ordering a more definite statement. Defendants' motion does not ask for additional and more specific facts or allegations. Thus, there is no concern that Rule 12(e) will require Plaintiff to go beyond the requirements in Rules 8(a)

and 12(b)(6). *Cf. Clark*, 213 F.R.D. at 233 (noting that "to the extent Rule 12(e) can be implemented to require more than what is required by Rules 8(a)(2) and 12(b)(6), and may thereby be prone to abuse by defendants, 'its exercise should be cast in the mold of strictest necessity'" (citation omitted)). In other words, the motion here will not result in Plaintiff having to offer anything more than a short and plain statement that sets forth plausible allegations entitling him to relief. He has done that. All that is left is to literally fill out the details already in his complaint.

Accordingly, Defendant's motion for a more definite statement should be granted and Plaintiff ordered to produce a legible copy of the current complaint. This resolution is not an invitation to amend the complaint, however, so Plaintiff should provide a legible copy of the exact same complaint he previously filed.

## III.   <u>CONCLUSION</u>

The present matter was not improperly assigned to the Southern Division, nor is venue there so inconvenient that the case must be transferred. Thus, the motion to transfer should be **DENIED**. Because the complaint is not legible enough to enable a response, Defendants' motion for a more definite statement, Fed. R. Civ. P. 12(e), should be **GRANTED**.

## IV.   <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

14

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 15, 2019                                    S/ PATRICIA T. MORRIS
                                                         Patricia T. Morris
                                                         United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Randy Jackson, Jr. #148200 at Saginaw County Jail, 208 S. Harrison, Saginaw, MI 48602.

Date: April 15, 2019                               By s/Kristen Castaneda
                                                              Case Manager